Martha Zelman, J.
This is an action brought by plaintiff, Theresa Phillips, in Small Claims Court for $500 for the approximate value of her 1967 Chrysler which she alleges was wrongfully destroyed by the defendant, Satellite Auto Parts Inc. The above-mentioned defendant impleaded the City of New York as a third-party defendant.
Plaintiff, Mrs. Phillips, appeared in person and testified that she purchased a used 1967 Chrysler from one Lou Courto and that she registered said car on March 21, 1973 (Registration No. 35907W) and that said registration expired February 28, 1974. She also testified she is a widow living on social security with two small children and that from time to time she had bought new parts from Metropolitan Auto Parts Inc. — an alternator for $28.30, a regulator for $7.50, a battery for $46.60, a starter for $24.50, some wheel bearings for $2.60 and $3.30, and brakes for $29, totaling with taxes $153.15. Her brother installed these parts in her car in her driveway of her one-family home. She stated she did not renew her registration because the car was not functioning and she was using her extra funds for the various parts. Mrs. Phillips further testified that on January 19, 1974 at 5:30 in the evening her brother backed her car out of her private driveway and placed it right in front of her one-family home while he pulled his car into the driveway to store something in the garage and that her car was ticketed a short time thereafter by the *37 Sanitation Department. No one advised her that this was happening to her car. She stated that at 7:00 in the morning of June 20, 1974 a neighbor called her on the phone and told her her car was being towed away. She immediately called the Police Department and the Sanitation Department and learned that there were three junk yards in the County of Queens where her car might be. Finally she found that her car was at the Satellite junk yard. At 7:00 a.m. she immediately called Satellite, defendant’s junk yard, and spoke to "Booby Farina” who advised her that she could get her car back if she paid the $25 towing fee and another fee of $3. They told her not to worry and to come down. About an hour and a half later she arrived at the junk yard and found that her car had been completely destroyed. She showed, through a bill of sale of one Louis Courto, that her car book value on June 20, 1974 was $525.
Sergeant George Lishutz, Shield No. 403, of the Queens Auto Squad, testified that he as well as two other officers were stationed at this particular junk yard. That he is a member of the National Auto Theft Bureau, and that his job is to establish from the VIN Number (Vehicle Identification Number) that the car is not stolen. He testified that although his specific duty is to determine whether or not a car is stolen he also releases a car according to its value. The court elicited from him that he is not in any way trained as to be in the capacity of an expert to appraise the value of cars. He told the court that if a car is not worth $100 it is destroyed and that if it is worth more than $100 it is held for five days. He also testified that the parts of each car are removed prior to the scrapping, that no log is kept of what parts are taken from what car, nor the value of said parts, nor the disposition of said parts, nor did he know who gets the money from the parts. He testified that he examines from 30 to 40 cars a day and that five cars are held for five days out of the 35 — two of the five are usually stolen, and two are held because he feels that they are valued at more than $100. While his function as an officer of the Police Department is to trace stolen cars, suddenly he is placed in the role of advising Satellite Auto Parts Inc. to demolish the car. In the opinion of the court, although the court cannot tell the Police Department how to run its business, it seems unconscionable that no records are kept as to what happens to these parts, nor are records kept as to an evaluation and by whom and why of each car, nor is *38 there a picture taken of any of the cars before they are destroyed.
Introduced into evidence by the attorney for the defendant, Satellite, was a copy of a contract entered into by the City of New York through the Department of Sanitation and binders for an agreement for the removal, storage and disposal of derelict vehicles, clocked in on November 26, 1973 into Room 1023 at 346 Broadway, New York City. This is apparently the authority under which Satellite Auto Parts Inc. operates in conjunction with the City of New York (Sanitation Department). Specifically this case is covered by the afore-described contract as No. 4 for the entire Borough of Queens. Counsel for defendant, Satellite, requested this court to review paragraphs 10 and 12.
Paragraph 10 is as follows: "10. The Contractor, shall, after notification as provided for in Article 2, remove such vehicles to his storage area, and shall not dispose of, dismantle, bale, or macerate any such vehicle for a period of three (3) days unless otherwise directed in writing by the Department of Sanitation or Police Department. The Contractor shall not be required to store any such vehicle under this paragraph for a period of more than three (3) days unless otherwise directed in writing by the Police Department or the Department of Sanitation. During this holding period, the Contractor shall not bale, dispose of, dismantle, macerate, remove or sell any such vehicle or any of its component parts. The Contractor shall store such vehicles in an area accessible to the employees of the Police and Sanitation Departments and shall inform such employees of the location of any vehicle towed to the Contractor’s Yard. The Contractor shall store such vehicles in a reasonable and prudent manner so as to prevent undue damage to any such vehicle, and expressly agrees to refrain from stacking or piling such vehicle, and expressly agrees to refrain from stacking or piling such vehicles one upon another. During the holding period, the Contractor must designate and advise the Commissioner of his primary and secondary holding areas, each of which area shall have the capacity to store a minimum of twenty (20) vehicles; and each of which shall be accessible to the employees of the Police and Sanitation Departments. The primary holding area shall be used for those vehicles removed to the storage yard or yards most recently.”
Paragraph 12 states: "12. The Contractor shall not scrap, *39 dismantle, macerate, or destroy any vehicle until the vehicle identification number plate has been removed by the Contractor, recorded by the Police Department personnel, and the Contractor otherwise taken all of the appropriate steps required by Section 429 of the New York State Vehicle and Traffic Law. Prior to disposing of or selling the motor of any vehicle over which the Contractor has been granted the right to sell or dispose of pursuant to Article 11, the Contractor shall provide a written notice to the Police Department personnel at his yard, within one day prior to the intended sale or disposition, indicating the serial number of the D.S. 464 or other written authorization form, the vehicle identification number, and any other information requested by the Police Department.
"Upon the Contractor’s request, the Department shall furnish any information and complete any forms necessary and required by the Contractor to enable him to comply with the provisions of Section 429 of the Vehicle and Traffic Law.”
Defendant also cites section 1224 of the Vehicle and Traffic Law entitled "Abandoned vehicles”.
"(a) with no number plates affixed thereto, for more than six hours on any highway or other public place;
"(b) for more than twenty-four hours on any highway or other public place, except a portion of a highway or public place on which parking is legally permitted;
"(c) for more than forty-eight hours, after the parking of such vehicle shall have become illegal, if left on a portion of a highway or public place on which parking is legally permitted;
"(d) for more than seven days on property of another if left without permission of the owner.
"2. If an abandoned vehicle, at the time of abandonment, has no number plates affixed and is of a wholesale value, taking into consideration thé condition of the vehicle, of two hundred fifty dollars or less, title shall immediately vest in the local authority having jurisdiction thereof.”
It is the finding of this court that in the instant case of Mrs. Phillips all her constitutional rights have been violated to no end. Under section 1224 of the Vehicle and Traffic Law her car had to be abandoned "for more than six hours on any highway or other public place.” In the case at bar Mrs. Phillips’ car was in front of her one-family home for two hours. Simply ringing the door bell would have elicited her *40 ownership of the car, and certainly tracing her VIN Number would have been another alternative. Paragraphs 10 and 12 of the agreement between the Sanitation Department and Satellite Auto Parts certainly have been violated.
While this court cannot tell the Police Department how to operate its business, it certainly seems incredible that three policemen are kept on duty at one junk yard and while looking for stolen cars suddenly find themselves as auto appraisers for the defendant, Satellite Auto Parts.
Why aren’t these removed parts logged — who gets them? Why is the City of New York just paid $16 by Satellite Auto Parts per car? These are all the answers that this court would like to have been able to elicit. Throughout the city there are abandoned cars which remain on city streets for days while this particular car was literally grabbed. It leads one to think —this entire matter should be sent to the District Attorney’s office for further investigation to determine whether or not there have been further aspects of law violated in making contracts of this nature against the interests of the public at large. Certainly valuable auto parts are involved which could be a large source of revenue to the financially starved City of New York. Police manpower could also be used to better advantage. Let us get some of these questions in passing answered.
Judgment for the plaintiff for $500, plus costs and disbursements of this action.